**Kathryn PARROTT, Plaintiff-Respondent,**

v.

**Richard M. REIS, Defendant-Appellant.**

**No. 33306.**

St. Louis Court of Appeals.
Missouri.

May 20, 1969.

Joseph B. Moore, County Counselor, Don R. Williams, Associate County Counselor, Clayton, for defendant-appellant.

Niedner, Niedner & Moerschel, Charles A. Hurth, Jr., St. Charles, for plaintiff-respondent.

JAMES H. KEET, Jr., Special Judge.

Appellant appeals from a judgment on verdict for $200.00 actual damages against him on respondent's petition for damages because of alleged false imprisonment. The sole question raised by him and considered on this appeal is whether respondent made a submissible case.

Viewing the evidence in the light most favorable to respondent (plaintiff) and according plaintiff the benefit of all supporting inferences fairly and reasonably deducible from the evidence and treating appellant's (defendant's) evidence as untrue except as it tends to aid plaintiff (Burk v. Missouri Power & Light Co., Mo., 420 S. W.2d 274, 278; Parrish v. Herron, 240 Mo.App. 1156, 225 S.W.2d 391, 397), the court rules that a jury of reasonable persons could reasonably find therefrom the facts set out below.

At about 4:15 A.M., on September 10, 1964, defendant, then age twenty-nine and a St. Louis County Police Officer for less than a year and still on probationary status, went in Big Roy's Restaurant at Chesterfield, Missouri. The plaintiff, Kathryn Parrott, was then on duty as a waitress. She had worked at the cafe since April and was known as "Kitty." Her home was at Defiance, twenty miles away. Defendant gave her a food order to go. They knew each other but not by name.

About thirty days before, defendant had learned that there were warrants on file for a Lisa Gibson for writing bad checks and for failing to appear, along with a federal parole hold order. After that he had been in the cafe a number of times, including on September 7, when plaintiff waited on him, as she had done many times previously. When he had been in the cafe before he had laughed and talked with the waitresses.

After placing his order, defendant went back to his police car and radioed to see if the warrants and hold order were still active, believing that plaintiff was Lisa Gibson. He learned they were still on file but did not get, or try to get, any description or other information. At trial he gave no reason for believing that plaintiff was Lisa Gibson. No one had suggested to him that a person of plaintiff's description was at Big Roy's. Lisa was shorter than plaintiff and had different color hair.

Re-entering the cafe, defendant asked plaintiff why she wrote those bad checks, addressing her as "Lisa," without asking her who she was or anything else bearing on her identification. Plaintiff, believing he was joking, replied that she liked to write. She appeared to defendant as nonchalant and not serious. He then asked her if she would like to ride to Clayton. She believed that he was kidding, said she liked to ride but had work to do, and kept on working. Defendant knowing that Lisa Gibson used aliases, then asked plaintiff what name she was using. Plaintiff answered that she didn't know because she had so many names and she asked which one he would like. She kept telling him that she was not Lisa and that he knew she was not Lisa. Defendant became angry and said he was serious. He then said, "I place you under arrest," and with the help of another officer (not on duty) put handcuffs on plaintiff and told her he was taking her to Clayton. This was about fifteen minutes after he had re-entered.

When defendant first tried to put handcuffs on plaintiff, she thought he was kidding and pulled away from him and told him to leave her alone because she had work to do. Plaintiff kept denying that she was Lisa. Shoving her all the way (about sixty feet) out to the police car, the two officers tried to put her in the car, but she refused to get in. She had repeated over and over that defendant knew who she was and that she wasn't going with him and to leave her alone. She was crying as the two officers tried to push her into the police car. At this point, defendant went back in and asked the cook what name they had for plaintiff on their time sheet. The cook, the only other em-

ployee in the cafe then on duty, had worked there for about a year and knew him as "Red" and plaintiff as "Kitty." She told him plaintiff's name and said, "Red, you knew that wasn't Lisa." Defendant gave no reply but hit the coffee machine as he went back out. He at once released plaintiff, but kept her under watch until another officer came out and identified plaintiff as not being Lisa Gibson. Plaintiff was caused extreme embarrassment and emotional distress and suffered loss of wages and tips and minor physical injuries requiring medical treatment.

■ The wrong of false imprisonment is confinement, without legal justification —that is, unlawful detention or restraint against plaintiff's will. Warrem v. Parrish, Mo., 436 S.W.2d 670, 672; State ex rel. Patterson v. Collins, Mo.App., 172 S.W.2d 284, 290; Wehmeyer v. Mulvihill, 150 Mo.App. 197, 130 S.W. 681, 683; Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68, 70. Plaintiff made a prima facie case by showing, as she did, that the arrest was without a warrant for her arrest. Section 544.180, RSMo 1959, V.A.M.S.; Wehrman v. Liberty Petroleum Company, Mo.App., 382 S.W.2d 56, 63; State ex rel. Patterson v. Collins, supra, 172 S.W.2d, l.c. 290. Defendant had the burden of pleading and proving, as an affirmative defense, that he had reasonable cause to believe plaintiff had committed the offense. Nelson v. R. H. Macy & Co., Mo.App., 434 S.W.2d 767, 773; Wehrman, supra, 382 S.W.2d, l.c. 63. As a general rule, such defense is for the jury. Parrish v. Herron, supra, 225 S.W.2d, l.c. 398. Defendant is charged with knowing all of the facts he could have obtained by due diligence before making the arrest, and had a duty to use all reasonable means to avoid a mistake of identity. Hanser, supra, 197 S.W., l.c. 71; Parrish v. Herron, supra, 225 S.W.2d, l.c. 398–399; Simpson v. Boyd, 212 Ala. 14, 101 So. 664, 665; Walton v. Will, 66 Cal.App.2d 509, 152 P.2d 639, 641; People v. Miller, 193 Cal.App.2d 838, 14 Cal.Rptr. 704, 707; Blocker v. Clark, 126 Ga. 484, 54 S.E.

1022, 1023, 7 L.R.A.,N.S., 268; Massey Stores, Inc. v. Reeves, 111 Ga.App. 227, 141 S.E.2d 227, 228–229; O'Neill v. Keeling, 227 Iowa 754, 288 N.W. 887, 889, 127 A.L.R. 1050; 32 Am.Jur.2d 132–133, ¶ 71; 35 C.J.S. False Imprisonment §§ 25 and 29, pp. 659–660, 675. The facts must afford him a substantial belief; and if he has no facts in his possession and does not try to obtain any at the time he takes a person into custody, the arrest is unauthorized, the detention is unlawful and the plaintiff makes a submissible case. Hanser, supra, 197 S.W., l.c. 71.

Defendant urges that as a matter of law plaintiff's replies to him gave him probable cause to believe that she was Lisa Gibson and was admitting her guilt and inviting arrest. He relies specifically on the above replies plaintiff gave, upon being addressed as Lisa and not knowing whether he knew her name or not. Defendant does not contend that the restraint was as a matter of law with plaintiff's consent. Such contention would be frivolous in view of the evidence that would justify a finding that plaintiff kept denying that she was Lisa and resisted defendant's actions which placed her under restraint.

■ If the plaintiff had represented that she was Lisa or had otherwise misled defendant as to her identity, he would have a defense. Blocker, supra, 54 S.E., l.c. 1023; Stork v. Evert, 47 Ohio App. 256, 191 N.E. 794; 32 Am.Jur.2d 132, ¶ 71. But plaintiff's failure to identify herself would not of itself authorize defendant to arrest her without a warrant. Harrer v. Montgomery Ward & Co., 124 Mont. 295, 221 P.2d 428, 434. Nor would it, with the other circumstances viewed favorably to plaintiff, justify the arrest as a matter of law.

Defendant does not deny that he detained or restrained plaintiff. He, in effect, asserts that she brought the arrest on herself. The credible evidence favorable to plaintiff does not sustain this position. Quinn v. Rosenberg, Mo.App., 399 S.W.2d

433, 444; Wehrman v. Liberty Petroleum Company, Mo.App., 382 S.W.2d 56, 65.

Defendant's position wholly disregards the believable evidence that plaintiff repeatedly told him that she was not Lisa and resisted the restraint; that her replies were given in a joking way; and that this should have been apparent to defendant. With such facts the jury could reasonably find that defendant did not have probable cause to believe that she was Lisa. Her replies were not of the kind that were appropriate for a serious confrontation. They could reasonably be taken in the context of the circumstances of a waitress bantering with a customer who had previously laughed and talked, and, inferably, kidded with the waitresses at Big Roy's.

Plaintiff's repeated protestation that she was not Lisa and her resistance would be a danger signal to a person acting reasonably in defendant's position. He should have inquired as to her identity, which he could have done by asking the cook or plaintiff herself or by calling back to headquarters to get a description of Lisa Gibson or by contacting someone at Defiance, where plaintiff had a good reputation. Compare, in similar facts situations, Parrish v. Herron, supra, 225 S.W.2d, 1.c. 398; and Walton v. Will, supra, 152 P.2d, 1.c. 641. Defendant's failure to check plaintiff's identity further, under the circumstances in this case, was inconsistent with good faith. Compare Blocker, supra, 54 S.E., 1.c. 1024. During the conversation it should have become apparent to defendant (at least, the jury could reasonably so find) that plaintiff was vigorously denying his accusation prior to the arrest. Compare: Maracle v. State, 50 Misc.2d 348, 270 N.Y.S.2d 439, 443, involving a situation the court described as "replete with *caveat actor*," but one no more so than is the case here.

The evidence, viewed favorably to plaintiff, does not show as a matter of law that she caused defendant, by her language or conduct, to arrest her. He refused to act on information she gave him (that she was not Lisa) that would have disclosed a mistake was being made. A very simple investigation would have disclosed that he was arresting the wrong person. Under such circumstances the jury could reasonably find that defendant had not exercised due diligence (Walton v. Will, supra, 152 P.2d, 1.c. 641). What is even more obvious, it cannot be said as a matter of law that defendant acted with due diligence. The only means defendant used was to approach plaintiff, call her Lisa, accuse her, and then consider her words (without regard to the joking and nonchalant way they were uttered and ignoring her denials that she was Lisa) as indicating that plaintiff probably was Lisa. Before such dialogue, he had no reason to believe she was Lisa. This was not only ill-advised but an unfair way to proceed. It would have taken only a moment to check with the cook as to plaintiff's identity, as he did later. He did not even ask plaintiff her name or as to anything bearing on her identification. He accosted her while she was busy in a cafe he had frequented. The jury could have reasonably found that it was apparent to him, or should have been, that she did not think he was serious and kept denying that she was Lisa and resisted the arrest and restraint and gave defendant no cause to believe that she was probably Lisa.

The trial court did not err in submitting the case to the jury. The judgment should be and is affirmed.

BRADY, J., concurs.